# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JULIUS LEE WILLIAMS,          )
                              )
                 Plaintiff,   )
                              )
          v.                  )          1:17CV16
                              )
NANCY A. BERRYHILL,           )
Acting Commissioner of Social )
Security,[1]                  )
                              )
                 Defendant.   )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Julius Lee Williams, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 15; see also Docket Entry 13 (Plaintiff's Memorandum), Docket Entry 16 (Defendant's Memorandum),

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Docket Entry 17 (Plaintiff's Reply)).[2]  For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of September 3, 2009.  (Tr. 290-302.)  Upon denial of those applications initially (Tr. 136-65, 218-25) and on reconsideration (Tr. 166-95, 226-43), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 244).  Plaintiff, his attorney, one of Plaintiff's mental health case workers, and a vocational expert ("VE") attended the hearing.  (Tr. 48-85.)  The

---

[2] Following the completion of briefing on the parties' cross-motions for judgment, Plaintiff filed a Motion to Supplement the Record (Docket Entry 18) with a "July 20, 2017 letter . . . [from] Presley Bright, a psychiatric social worker therapist at Family Preservation Service of North Carolina in Durham" (Docket Entry 18-1 at 3 (emphasis added)).  Defendant did not oppose Plaintiff's Motion.  (See Docket Entries dated Aug. 1, 2017, to the present.)  Additionally, on September 12, 2017, Plaintiff filed a second Motion to Supplement the Record (Docket Entry 19) with treatment records from an August 30, 2017 office visit with Duke Health (see Docket Entry 20).  However, this Court may not consider new evidence that Plaintiff did not submit to the ALJ or the Appeals Council.  See Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996).  Instead, the Court can remand the case under sentence six of 42 U.S.C. § 405(g) for the Commissioner to consider the new evidence, if Plaintiff can demonstrate that the evidence qualifies as both new and material, and that good cause exists for the failure to submit the evidence to the ALJ or the Appeals Council.  Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 n.3 (4th Cir. 1991).  "Evidence is material if there is a reasonable probability that the new evidence would have changed the outcome."  Id. at 96.  Here, Plaintiff's proposed new evidence fails to qualify as "material."  Mr. Bright opines that Plaintiff "has multiple health issues that have prevented him from obtaining work at this time" (Docket Entry 18-1 at 3 (emphasis added)) and, thus, Mr. Bright makes clear that his opinion applies to the time of his letter, i.e., July 20, 2017, which post-dates the ALJ's decision by nearly four years (see Tr. 41).  Similarly, the August 30, 2017 medical record from Duke Health reflects follow-up treatment for dysarthria and dysphagia, which the physician suspected resulted from tardive dyskinesia and tardive dystonia caused by Plaintiff's prior use of the anti-psychotic medications Invega and Thorazine.  (See Docket Entry 20 at 2.)  Significantly, the physician noted that Plaintiff had experienced those conditions "for about two years" (id.), which indicates that the conditions arose approximately two years after the ALJ's decision (see Tr. 41).  Accordingly, the undersigned will deny Plaintiff's Motions to Supplement the Record (Docket Entries 18, 19) as moot.

ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 29-41.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 11-16, 25-28), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] met the insured status requirements of the [] Act through September 30, 2011.

2.   [Plaintiff] has not engaged in substantial gainful activity since September 3, 2009, the alleged onset date.

3.   [Plaintiff] has the following severe impairments: schizoaffective disorder, polysubstance abuse, hepatitis C, obesity, and prostate cancer.

. . .

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . . Function by function, he is capable of lifting, carrying, pushing, and pulling ten pounds occasionally, can stand and walk two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. [Plaintiff] can do no balancing, climbing, working at heights, or around dangerous machinery. In addition, he is limited to work involving only simple, routine, repetitive tasks, meaning [Plaintiff] can apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations. [Plaintiff] can have only occasional interaction with coworkers and supervisors, no

interaction with the public, and is unable to work at
jobs requiring complex decision making, constant change,
or dealing with crisis situations.

. . .

6. [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the [] Act, from September 3, 2009, through
the date of this decision.

(Tr. 34-41 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the

claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial

_____

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . .

(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

---

[5] (...continued)
[which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

1) the ALJ erred by failing to consider Listing 12.03, and by finding that Plaintiff's mental impairment did not meet or equal the criteria of Listing 12.04B (Docket Entry 13 at 1-2);

2) the ALJ overemphasized Plaintiff's medical noncompliance in formulating the RFC (id. at 2-3);

3) "[t]he ALJ was further in error in his dismissal, or his giving little weight to, the informed professional opinion of [Plaintiff's] primary care physician, Dr. Veronica Ray" (id. at 3);

4) the ALJ committed error by failing to evaluate the "February 21, 201**3**" decision of the North Carolina Department of Health and Human Services ("NCDHHS") "finding [Plaintiff] disabled for Medicaid purposes" (id. at 4 (emphasis added); see also Docket Entry 17 at 1-2); and

5) the ALJ neglected to evaluate the combined effect of all of Plaintiff's impairments (docket Entry 13 at 4).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 16 at 4-21.)

## 1. Listings 12.03 and 12.04

In Plaintiff's first issue on review, he faults the ALJ for failing to expressly consider whether Plaintiff's schizoaffective disorder met or equaled the requirements of Listing 12.03 (Schizophrenic, Paranoid and Other Psychotic Disorders), see 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.03.  (See Docket Entry 13 at 1-2.)  In addition, Plaintiff maintains that the ALJ erred in

rating Plaintiff as having only _moderate_ limitation in activities of daily living and social functioning in connection with the paragraph B criteria of Listing 12.04 (Affective Disorders). (_Id._ at 2 (citing Tr. 35).) According to Plaintiff, he "has indeed evidenced _marked_ restriction of activities of daily living and _marked_ difficulties in maintaining social functioning." (_Id._ (emphasis added) (citing Tr. 501, 503, 505, 508, 514, 527).)[7] Plaintiff's contentions fall short.

"Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in [A]ppendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" _Radford v. Colvin_, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR [P]t. 404, [S]ubpt. P, App['x] 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." _Sullivan v. Zebley_, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet

---

[7] Plaintiff's citation to page 899 of the record constitutes a typographical error (_see_ Docket Entry 13 at 2), as the record in this case ends at page 764.

all of the medical criteria in a particular listing." <u>Bennett</u>, 917 F.2d at 160 (citing <u>Zebley</u>, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); <u>see also</u> <u>Zebley</u>, 493 U.S. at 530 ("An impairment that manifests only some of th[e] criteria [in a listing], no matter how severely, does not qualify."). "[When] there is <u>ample evidence</u> in the record to support a determination that [a claimant's impairment] met or equalled [sic] one of the [ ] impairments listed in Appendix 1 . . . [and the claimant's] symptoms appear to correspond to some or all of the requirements of [such listings,] . . . [t]he ALJ should [ ] identif[y] the relevant listed impairments . . . [and] should then [ ] compare[ ] each of the listed criteria to the evidence of [the claimant's] symptoms." <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172-73 (4th Cir. 1986) (emphasis added).

Here, given the ALJ's finding at step 2 of the SEP that Plaintiff suffered from severe schizoaffective disorder (<u>see</u> Tr. 34), the ALJ should have assessed the degree of functional limitation resulting from Plaintiff's schizoaffective disorder pursuant to criteria in Listing 12.03, which governs "[s]chizophrenic, paranoid and other psychotic disorders," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.03, rather than Listing 12.04, which governs "[a]ffective disorders," <u>id.</u>, § 12.04. (<u>See</u> Tr. 35.) However, that error remains harmless under the circumstances of this case, <u>see generally</u> <u>Fisher v. Bowen</u>, 869 F.2d

1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"), where the ALJ proceeded to evaluate whether Plaintiff's schizoaffective disorder met the paragraph B criteria of Listing 12.04, which match the B criteria of Listing 12.03 (see id.; compare 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.03B, with id., § 12.04B).

Paragraph B of Listings 12.03 and 12.04 contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.03B; see also 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Pertinent to the instant matter, the ALJ must rate the degree of limitation in the first three broad functional areas using a "five-point scale: [n]one, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). In that regard, to meet or equal the requirements of Listings 12.03B or 12.04B, Plaintiff must show that his schizoaffective disorder:

B. Results in at least two of the following:

    1.  Marked restriction of activities of daily living; or

    2.  Marked difficulties in maintaining social functioning; or

    3.  Marked difficulties in maintaining concentration, persistence, or pace; or

> 4. Repeated episodes of decompensation, each
> of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.03B, 12.04B (emphasis

added). In this context, to qualify as "marked," a limitation must

"interfere seriously with [one's] ability to function

independently, appropriately, effectively, and on a sustained

basis." Id., § 12.00(C).

The ALJ cited specific record evidence to support his finding

of moderate limitation in activities of daily living and social

functioning:

> In activities of daily living, [Plaintiff] has moderate
> restriction. He has been homeless for long periods of
> time but is independent with [h]is activities of daily
> living. In addition, [Plaintiff] is able to count
> change, shop, and go out alone. In social functioning,
> [Plaintiff] has moderate difficulties. He has reported
> that he will isolate himself at times; however, the
> record shows he does have friends he can go to for
> advice. [Plaintiff] also testified that he has a good
> relationship with his son and goes to church on occasion.

(Tr. 35 (internal citation omitted) (emphasis added).)

Notably, Plaintiff does not dispute the accuracy of the

evidence upon which the ALJ relied in finding moderate limitation

in these functional areas. (See Docket Entry 13 at 2.) Instead,

Plaintiff points to other record evidence (not expressly cited by

the ALJ in connection with the step three analysis) as proof of a

marked limitation in these areas. (Id.) More specifically,

Plaintiff refers the Court to "the records of hospitalizations in

Goldsboro in 2010-2011, replete with references to auditory/visual

13

hallucinations and suicidal thoughts." (Id. (citing Tr. 501, 503, 505, 508, 514, 527).)

Although the evidence Plaintiff cites arguably could have supported findings of marked limitation in activities of daily living and social functioning, none of that evidence compelled such findings. First, that evidence consists of psychiatric treatment Plaintiff received on March 29, 2009, February 20, 2011, and April 15, 2011, prior to his obtaining sobriety from alcohol and drugs. (See Tr. 501, 503, 505, 508, 514, 527; see also Tr. 56 (reflecting Plaintiff's testimony he has abstained from drugs and alcohol since March 23, 2011).)[8] Second, as noted by the ALJ (see Tr. 37, 39), Plaintiff's treatment providers suspected malingering and/or possible ulterior motivation for Plaintiff's reports of psychotic and/or suicidal ideation, because Plaintiff needed to find a place to live (see Tr. 501 (reflecting Plaintiff's homelessness), 503 (reporting that providers "suspected [Plaintiff] of malingering his symptoms", that Plaintiff remained "noncompliant with group [therapy] and was not motivated for change," and that Plaintiff "was vague and evasive" when questioned about his suicidality or hallucinations), 508 (remarking that homeless shelter had asked Plaintiff to leave the day before and describing Plaintiff's suicidal ideation as "vague"), 514 (noting Plaintiff's status as

_____

[8] Plaintiff's reported date of sobriety, March 23, 2011 (see Tr. 56), conflicts with the April 15, 2011 record from Waynesboro Memorial Hospital, which reflects that Plaintiff tested positive on that date for both cocaine and alcohol (see Tr. 508).

"homeless")). Third, in contrast to the evidence of activities and social interaction cited by the ALJ (see Tr. 35), none of those psychiatric records reflect _specific_ problems with Plaintiff's ability to engage in daily activities or to function socially (see Tr. 501, 503, 505, 508, 514, 527).

Accordingly, as the ALJ supported the _moderate_ limitation in activities of daily living and social functioning with substantial evidence, Plaintiff did not contest the accuracy of the evidence upon which the ALJ relied, and Plaintiff did not describe any evidence that _compelled_ the ALJ to find a _marked_ limitation, Plaintiff has not shown entitlement to relief on this front.[9]

## 2. RFC

Plaintiff next asserts that the ALJ overemphasized Plaintiff's "spotty record of medication compliance" in formulating the RFC. (Docket Entry 13 at 2.) In addition, Plaintiff challenges the ALJ's observation that Plaintiff's diuretic medication, Lasix, "cost only $4 at Wal-Mart and Target" (Tr. 38), because the transcript pages cited by the ALJ as support for that observation do not contain "any reference to the retail price of Lasix, whether at Wal-Mark, Target, or anywhere else" (Docket Entry 13 at 2 (citing Tr. 477-81, 496-560)). Plaintiff's arguments in this regard do not entitle him to reversal or remand.

---

[9]  Plaintiff did not expressly assign error to the ALJ's findings that Plaintiff's mental impairments caused _moderate_ limitation in concentration, persistence, or pace, and no episodes of decompensation. (See Docket Entry 13 at 1-2; see also Tr. 35.)

"[T]he [claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports show that the [claimant] is not following the treatment as prescribed and there are no good reasons for this failure." Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 3741856, at *7 (July 2, 1996).[10] "However, the [ALJ] must not draw any inferences about [the claimant's] symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the [claimant] may provide, or other information in the case record, that may explain infrequent or irregular

---

[10] Effective March 28, 2016, <u>see</u> Social Security Ruling 16-3p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date of original Ruling), the Social Security Administration superceded SSR 96-7p with Social Security Ruling 16-3p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." <u>Id.</u> The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," <u>id.</u>, and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," <u>id.</u> at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16-3p (<u>see</u> Tr. 41), and, because SSR 16-3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, <u>see</u> <u>Bagliere v. Colvin</u>, No. 1:16CV109, 2017 WL 318834, at *4-8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. Feb. 23, 2017) (Eagles, J.); <u>see also</u> <u>Hose v. Colvin</u>, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.). In any event, SSR 16-3p lacks relevance to the instant matter because, as noted above, the ALJ did not make an adverse credibility determination based on Plaintiff's medication noncompliance. (<u>See</u> Tr. 37, 39.)

medical visits or failure to seek medical treatment," such as an inability "to afford treatment." Id. at *7-8.

Here, the ALJ did not discuss Plaintiff's lack of medication compliance in connection with the assessment of Plaintiff's credibility (see Tr. 37, 39); rather, the ALJ merely summarized, in his recitation of Plaintiff's medical history, the repeated observations of Plaintiff's treatment providers that Plaintiff remained largely non-compliant with his medications (see Tr. 37-38).

Moreover, the ALJ based his observation that Lasix "cost only $4 at Wal-Mart and Target" (Tr. 38) on a January 13, 2011 treatment record from Wayne Memorial Hospital (see Tr. 521). In that record, Dr. Frederick L. Potts noted Plaintiff's statement that he did not fill his Lasix prescription because "he could not afford it," and advised Plaintiff "that if he can afford [alcohol and tobacco], he should be able to afford his medicine" and that Lasix "can be gotten from Wal-Mart or Target for $4." (Id.)

Furthermore, the ALJ did not improperly base the RFC determination on Plaintiff's medication noncompliance; rather, the ALJ appropriately considered the clinical findings in the objective medical evidence, Plaintiff's subjective complaints, and the opinion evidence of record. (See Tr. 37-39.)

In short, Plaintiff's second issue on review does not warrant reversal or remand.

17

### 3. Treating Physician's Opinion

Next, Plaintiff maintains that the ALJ "err[ed] in his dismissal, or his giving little weight to, the informed professional opinion of [Plaintiff's] primary care physician, Dr. [] Ray." (Docket Entry 13 at 3.) According to Plaintiff, "[a]lthough [Dr. Ray's] two statements . . . are very short, it should go without saying that her opinion is premised on [Plaintiff's] medical chart and [Dr. Ray's] treatment of [Plaintiff]." (Id.) Plaintiff argues that Dr. Ray's opinion "bind[s] the ALJ unless contradicted by substantial evidence" (id. (citing Schisler v. Heckler, 787 f.2d 76 (2d Cir. 1986)), and deems the ALJ's "slim justification for giving little weight to Dr. Ray's opinion" inadequate "under the standard of Byron v. Heckler, 742 F.2d 1232 (10th Cir. 1984)" (Docket Entry 13 at 3 (citing Tr. 39)). Plaintiff's arguments do not warrant relief.

Notwithstanding Plaintiff's reliance on cases from the United States Courts of Appeals for the Second and Tenth Circuits, the plain language of the treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment, see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), but recognizes that not all treating sources or treating source opinions merit the same deference. For example, the nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an

opinion.  See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).

Moreover, as subsections (2) through (4) of the rule detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence of record.  See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). Indeed, the Fourth Circuit has made clear that, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig, 76 F.3d at 590 (emphasis added).  Finally, opinions by physicians regarding the ultimate issue of disability and other such findings dispositive of a case do not receive controlling weight because the Commissioner reserves the authority to render such decisions.  See 20 C.F.R. §§ 404.1527(d), 416.927(d).

Dr. Ray submitted two letters, dated December 12, 2012, and March 11, 2013, and addressed "To Whom It May Concern," which contain opinions regarding Plaintiff's ability to work.  (Tr. 691, 764.)  In the first letter, Dr. Ray opined that Plaintiff "[wa]s unable to work at this time" (Tr. 691), and, in the second letter, Dr. Ray estimated that Plaintiff "[wa]s unable to work at this time, and w[ould] be unable to work for the next six months" (Tr. 764).

Here, the ALJ's evaluation of Dr. Ray's opinions comports with the above-cited regulations and Craig. The ALJ found as follows:

> On December 12, 2012, Veronica Ray, MD[], submitted a letter stating that [Plaintiff] is being treated at Lincoln Community [Health] Center and is unable to work at this time. This opinion is given little weight because <u>it is an opinion on the ultimate issue of disability, is not supported by objective medical evidence or treatment notes, does not specify any functional limitations and is inconsistent with other medical evidence and opinions</u>.

(Tr. 39 (emphasis added).)[11]

As quoted above, the ALJ gave <u>four</u> reasons, each proper under the governing standard, for his decision to discount Dr. Ray's opinion. (<u>Id.</u>) Even a facial review of Dr. Ray's letter makes clear that the ALJ did not err by discounting Dr. Ray's opinion for failing to specify any functional limitations and as regarding a matter (i.e., ability to work) reserved to the Commissioner, <u>see</u> 20 C.F.R. §§ 404.1527(d), 416.927(d). (Tr. 39.) With regard to the ALJ's finding that Dr. Ray's opinion did not mesh "with other medical evidence and opinions" (<u>id.</u>), the ALJ's RFC analysis discusses numerous objective findings on examination and medical opinions which conflict with Dr. Ray's opinion that Plaintiff

___

[11] The record before the Court does not establish that the record before the ALJ contained the March 11, 2013 letter from Dr. Ray. At the hearing, the ALJ admitted exhibits 1F through 19F into the record without objection from Plaintiff's attorney (<u>see</u> Tr. 51-52), and Dr. Ray's March 11, 2013 bears the label "EXHIBIT NO. 20F" (Tr. 764). Moreover, the Appeals Council indicated that it "ha[d] received <u>additional</u> evidence which it is making part of the record" which included Dr. Ray's March 11, 2013 letter. (<u>See</u> Tr. 15 (emphasis added).) However, even if the record before the ALJ contained the March 2013 letter, the ALJ's failure to expressly discuss that letter constitutes harmless error, as both of Dr. Ray's letters express essentially the same opinion, i.e., that Plaintiff lacks the ability to work. (<u>Compare</u> Tr. 691, <u>with</u> Tr. 764.)

lacked the ability to work (see Tr. 37-39). Moreover, beyond the conclusory statement that "it should go without saying that [Dr. Ray's] opinion is premised on [Plaintiff's] medical chart and [Dr. Ray's] treatment of [Plaintiff]" (Docket Entry 13 at 3), Plaintiff makes <u>no</u> attempt to point the Court to specific evidence in Plaintiff's "medical chart" or Dr. Ray's treatment notes that supports her opinion (see id.).[12] That failure forecloses relief. See <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); <u>Hughes v. B/E Aerospace, Inc.</u>, No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) ("A party should not expect a court to do the work that it elected not to do.").

Simply put, Plaintiff's third assignment of error fails as a matter of law.

### 4. Medicaid Disability Decision

In Plaintiff's fourth issue on review, he faults the ALJ for failing to evaluate and weigh the "February 21, 201**3**" decision of

---

[12] The record before the Court reflects that, although Plaintiff visited the Lincoln Community Health Center on multiple occasions in 2011 and 2012 (see Tr. 564-91, 616-30), <u>Dr. Ray</u> treated Plaintiff on only one occasion on April 19, 2012 (see Tr. 623-26). Thus, doubt exists whether, at the time Dr. Ray prepared the opinion(s) in question, she would qualify as a treating physician under the regulations. See 20 C.F.R. §§ 404.1527(c)(i), 416.927(c)(i) ("When the treating source has seen [a claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the Social Security Administration] will give the source's opinion more weight then [the Administration] would give it if it were from a nontreating source.").

the NCDHHS ("Medicaid decision") "reversing an earlier unfavorable decision and finding [Plaintiff] disabled for Medicaid purposes . . . ." (Docket Entry 13 at 4 (emphasis added); see also Docket Entry 17 at 1-2 (citing Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *6 (Aug. 9, 2006) (providing that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered")).)  Plaintiff has expressed certainty that the Medicaid "decision . . . was bar-coded and faxed into the Social Security record," but has reported that he could not locate the decision in the record.  (Docket Entry 13 at 4.)  Plaintiff posits that "[t]he significance of the [Medicaid decision] is that it was made under the exact same standards as for Social Security disability," although Plaintiff "concede[s] that the Social Security Administration is not bound by the [Medicaid decision] . . . ."  (Id. (emphasis in original.)  These arguments do not demonstrate grounds for reversal or remand.

As an initial matter, the NCDHHS issued the Medicaid decision on February 21, 201**4**, not February 21, 201**3** as Plaintiff alleges.  (See Tr. 420 (Medicaid decision's signature page reflecting typewritten date of February 21, 2013, with a handwritten "4"

marked over the "3"); see also Tr. 411 (cover letter dated February 26, 201**4**, signed by Plaintiff's attorney, and addressed to the Appeals Council indicating that he enclosed "[t]he February 21, 201**4** favorable decision of the [NCDHHS]" (emphasis added)).)  Thus, the ALJ could not have discussed or weighed the Medicaid decision, as that decision post-dated the ALJ's July 24, 2013 decision by nearly six months.  Moreover, the order of the Appeals Council denying review makes clear that the Appeals Council considered the Medicaid decision and incorporated it into the record (see Tr. 11, 15, 416-21), but "found that this information does not provide a basis for changing the [ALJ's] decision" (Tr. 12).  Significantly, Plaintiff makes no argument that the Medicaid decision constitutes new and material evidence before the Appeals Council that rendered the ALJ's decision unsupported by substantial evidence.  (See Docket Entry 13; see also Docket Entry 17.)[13]

In sum, no error occurred in connection with the Medicaid decision.

---

[13] Defendant argues that, "even if the Medicaid decision had been submitted into the record and considered by the ALJ and/or the Appeals Council, it would not direct a different outcome" because "'[t]he record did not contain any indication of what medical evidence the . . . Medicaid decision was based upon[, and] [t]hus . . . did not provide substantial evidence of [] Plaintiff's alleged disability.'" (Docket Entry 16 at 18 n.2 (quoting Lail v. Colvin, No. 5:13-cv-00089-MR-DLH, 2014 WL 4793234, at *6 (W.D.N.C. Sept. 25, 2014) (unpublished)).) Although the Medicaid decision contains a summary recitation of the evidence in the record before the NCDHHS, that recitation makes clear that the NCDHHS considered evidence from the latter half of 2013 and 2014 that the ALJ here did not consider, as well as testimony from unidentified witnesses which may have differed from the testimony before the ALJ. (See Tr. 416-18.) Thus, should the Court reach the issue, like Lail, the Court should find that the Medicaid decision does not render the ALJ's decision unsupported by substantial evidence.

## 5. Combined Effect of Impairments

Lastly, Plaintiff contends that the ALJ neglected to evaluate the combined effect of all of Plaintiff's impairments. (Docket Entry 13 at 4.) Plaintiff maintains that "[o]ne gets a wrong impression of [Plaintiff] by looking at his various ailments and historical events alone and isolated, out of context." (Id.) According to Plaintiff, "the December 4, 2012 letter of Kimberli Johnson at Alliance Behavioral Healthcare in Durham pretty much says it all" and "is as fine a picture of [Plaintiff] as we have anywhere, down to the slurred speech referenced in and in evidence at the June 13, 2[0]13 ALJ hearing." (Id. (citing Tr. 689-90).) Plaintiff's contentions fail.

A well-reasoned decision from a neighboring court addresses an ALJ's obligation to consider the combined effect of a claimant's impairments:

> When dealing with a claimant with multiple impairments, the Commissioner "must consider the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citing Reichenbach v. Heckler, 808 F.2d 309 (4th Cir. 1985)[)]. This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." Id. The ALJ's duty to consider the combined effects of a claimant's multiple impairments is not limited to one particular aspect of review, but is to continue "throughout the disability determination process." 20 C.F.R. § 404.1523.
>
> Following the Walker decision, the Fourth Circuit has provided little elaboration on what constitutes an "adequate" combined effect analysis. . . . In an unpublished opinion decided after Walker, the Fourth Circuit . . . found that the district court "correctly

determined that the ALJ had adequately explained his evaluation of the combined effect of [the claimant's] impairments." [Green v. Chater, No. 94-2049, 64 F.3d 657 (table), 1995 WL 478032, at *3 (4th Cir. Aug. 14, 1995) (unpublished).] In reaching this conclusion, the court focused on the ALJ's conclusory statement that he had considered all of the claimant's impairments, both singularly and in combination and then noted evidence that was consistent with this conclusion. Id. This evidence consisted of (1) the ALJ's finding that the claimant's combination of impairments precluded heavy lifting; (2) the ALJ's listing and consideration of each of the alleged impairments; and (3) the ALJ's finding that many of the claimant's symptoms were treatable. Id. . . . "Accordingly, the adequacy requirement of Walker is met if it is clear from the decision as a whole that the ALJ considered the combined effect of a claimant's impairments." [Brown v. Astrue, 0:10-cv-01584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) (unpublished).]

Williams v. Colvin, Civ. No. 6:11-2344-GRA-KFM, 2013 WL 877128, at *2 (D.S.C. Mar. 8, 2013) (unpublished).

Here, the ALJ provided a thorough discussion of the medical evidence and discussed each of Plaintiff's alleged impairments. (Tr. 37-39.) At step three, the ALJ expressly found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 34 (emphasis added).) In conjunction with the RFC determination, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 36.) Moreover, the ALJ's RFC, limiting Plaintiff to sedentary work with no balancing, climbing, heights, or dangerous machinery, and involving simple, routine, and

repetitive tasks, no interaction with the general public, occasional interaction with co-workers and supervisors, and no complex decision making, constant change, or crisis situations (id.), clearly accounted for Plaintiff's physical and mental impairments. Thus, the ALJ's decision, as a whole, adequately demonstrates that he considered Plaintiff's impairments in combination. See Paris v. Colvin, No. 7:12-CV-00596, 2014 WL 534057, at *12 (W.D. Va. Feb. 10, 2014) (unpublished) (holding that "[i]t is apparent from the RFC itself that the ALJ accounted for the cumulative impact of [the plaintiff's] impairments as supported in the record, providing restrictions that are both mental and physical"); Wilson-Coleman v. Colvin, No. 1:11CV726, 2013 WL 6018780, at *3 (M.D.N.C. Nov. 12, 2013) (unpublished) (Webster, M.J.) (concluding that "'sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a claimant's complaints of pain and level of daily activities'" (quoting Baldwin v. Barnhart, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005), aff'd, 179 F. App'x 167 (4th Cir. 2006)) (internal brackets omitted)), recommendation adopted, slip op. (M.D.N.C. Dec. 6, 2013) (Schroeder, J.); Jones v. Astrue, No. 5:07-CV-452-FL, 2009 WL 455414, at *15 (E.D.N.C. Feb. 23, 2009) (noting that ALJ's RFC assessment and summarization of medical records as to each

impairment indicate ALJ "considered all of [the c]laimant's mental and physical limitations together").

As a final note, even if the Court should find that the ALJ did not adequately explain his analysis of the cumulative effect of Plaintiff's impairments, the Court need not remand this case, because Plaintiff has not made any attempt to show how a more complete analysis would have resulted in a more restrictive RFC or a different outcome in the case (see Docket Entry 13 at 4). See Anderson v. Colvin, No. 1:10CV671, 2013 WL 3730121, at *7 (M.D.N.C. Jul. 12, 2013) (Webster, M.J.) (unpublished) ("Plaintiff has failed to establish how further scrutiny of the combination of her impairments results in any greater functional limitations than those already set forth in her RFC."), recommendation adopted in relevant part, 2014 WL 1224726 (M.D.N.C. Mar. 25, 2014) (Osteen, C.J.) (unpublished).

Plaintiff's fifth assignment of error thus provides no basis for relief.

### III.  CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE ORDERED** that Plaintiff's Motions to Supplement the Record (Docket Entries 18, 19) are **DENIED** as moot.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for

Summary Judgment (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that judgment be entered for Defendant.

                                    /s/ L. Patrick Auld
                                  **L. Patrick Auld**
                         **United States Magistrate Judge**

September 14, 2017